IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RONALD NATTRESS,  <br><br>　　　　　　　Plaintiff,  <br><br>vs.  <br><br>LANCASTER COUNTY, NEBRASKA, et al.,  <br><br>　　　　　　　Defendants. | 4:14-CV-3161  <br><br>MEMORANDUM AND ORDER |

　　　This matter is before the Court on the cross-motions for summary judgment filed by the plaintiff, Ronald Nattress and the defendants, Lancaster County and several Lancaster County employees. The plaintiff's motion for summary judgment (filing 20) will be denied in its entirety. The defendants' motion for summary judgment (filing 22) will be granted in part, and in part denied. Specifically, the plaintiff's first and third claims for relief will be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). And the plaintiff's second claim for relief will be dismissed as to Lancaster County and as to the individual defendants in their official capacities. But, the plaintiff may proceed on his second claim for relief against the remaining defendants in their individual capacities.

## I. BACKGROUND

　　　The events underlying this case were set in motion by an unrelated criminal prosecution: the plaintiff was charged with first degree sexual assault and was being held by the Lancaster County Department of Corrections at the Lancaster County Intake and Detention Facility (the IDF) pending trial. Filing 23 at 2.[1] Defendants Adam Powers, Robert Holbrook, and Scott Eisenmann were all employed by the Department of Corrections. Filing 23 at 2.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1). The Court has relied upon the parties' respective statements of material fact to the extent that they were not substantively disputed.

The IDF was connected by a skywalk to the Lancaster County Hall of Justice, where the trial was being held.[2] Filing 23 at 3. When the jury reached a verdict, the plaintiff was brought from the IDF to the Hall of Justice to receive it, accompanied by Corrections Officer Cheryl Slade (who is not a defendant) and Powers. Filing 23 at 2; filing 21-5 at 4. The plaintiff was found not guilty. Filing 23 at 2. The trial court accepted the verdict and ordered the plaintiff released from custody, but told the plaintiff that "it will take them a while to get you out." Filing 23 at 3. This was, apparently, a reference to the fact that instead of being released from the courtroom, the plaintiff would be taken back to the IDF for outprocessing. The plaintiff expected that he would have to go back to the IDF to get his personal effects, and for removal of a leg brace placed on him for trial. Filing 21-5 at 6.

The plaintiff, pleased with the outcome of the trial, made a taunting gesture toward the prosecuting attorney, with whom he had some history. Filing 24-4 at 18-20. The sequence of events that follows is disputed in some details—important details, to be sure—but the broad contours are consistent. Slade testified that she saw the plaintiff and prosecutor staring at each other, and that the plaintiff looked angry, so she stepped in and took the plaintiff by the arm because she did not want the situation to escalate. Filing 21-12 at 2. The plaintiff said that Slade grabbed his arm, so he pulled it away, telling her that she didn't have to grab him. Filing 21-5 at 6. The plaintiff's defense attorney echoed that account. Filing 21-7 at 4. Then Powers stepped in. Filing 21-5 at 7. According to defense counsel, Powers grabbed the plaintiff with both hands and dragged him from the room. Filing 21-7 at 4.

The plaintiff said that instead of going through what he called the "go to jail" door, he was taken to the hallway outside the courtroom. Filing 21-5 at 7. Powers, the plaintiff said, slammed him into the wall and then on to the ground and jumped on him, shouting "stop resisting, stop resisting." Filing 21-5 at 7. The plaintiff's defense counsel said that she could hear the officers in the hallway directing the plaintiff to "stop resisting." Filing 21-7 at 6. The plaintiff says that he was not resisting, and had been given no commands to disobey. Filing 21-5 at 8. Powers, on the other hand, testified that the plaintiff was told to put his hands behind his back to be handcuffed, but did not comply. Filing 21-8 at 2. Slade said the same thing. Filing 21-12 at 2. Powers said he took the plaintiff to the ground, but according to both Slade and Powers, the plaintiff kept pulling his arms underneath him, preventing the officers from handcuffing him. Filing 21-8 at 3; filing 21-12 at 2. Defense counsel said that when she exited the courtroom into the hallway, to see if

---

[2] A new facility, some distance away from the Hall of Justice, has since been opened. *See* filing 24-6 at 12.

- 2 -

she could calm the situation, "there were so many people on top" of the plaintiff that "there was nothing that could be said or done." Filing 21-7 at 6.

Eventually the plaintiff was handcuffed and Powers and a sheriff's deputy got the plaintiff up and walked him toward the IDF. Filing 21-5 at 10; filing 21-12 at 2. Holbrook and Eisenmann came up from the IDF and met them at the door to the skywalk. Filing 21-5 at 10. The plaintiff said that he couldn't walk because his leg was locked up, so Holbrook, Eisenmann, and perhaps Powers lifted him and carried him to the elevator to ride back to the IDF. Filing 21-5 at 11. (The plaintiff wasn't sure if Powers was in the elevator; Powers testified that he took a different elevator. Filing 21-8 at 4.) Slade said the plaintiff was continuing to resist by refusing to walk. Filing 21-12 at 3. According to the plaintiff, the officers on the elevator ran him into the back wall, again telling him to stop resisting. Filing 21-5 at 12. The plaintiff denies resisting. Filing 21-5 at 12. Eisenmann testified that the plaintiff was resisting by twisting his upper body, but denies slamming the plaintiff's head into the elevator wall. Filing 21-10 at 5-6.

The plaintiff and escorting officers were met off the elevator by a restraint chair, which the plaintiff was strapped into. Filing 21-5 at 12. The plaintiff says that an electronic restraint device (ERD) was displayed. Filing 21-5 at 12. (Such a device is much like a "Taser" gun, but it uses electrodes instead of wires to shock the target.) The plaintiff testified that Holbrook and Powers used their devices to shock the plaintiff repeatedly, while Eisenmann stood to the plaintiff's side. Filing 21-5 at 13-15. Powers, on the other hand, said that the plaintiff was resisting being strapped into the restraint chair and his ERD was applied once to the plaintiff's abdomen to secure his compliance. Filing 21-8 at 6. After that, the plaintiff complied and he was secured into the chair. Filing 21-8 at 8.

The plaintiff was charged with third degree assault on an officer (Slade), but that charge was reduced to simple third degree assault. Filing 21-15; filing 21-17. The defendant was convicted of third degree assault pursuant to a no contest plea, and was sentenced to 365 days' imprisonment. Filing 24-12 at 61, 69.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant

does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County,* 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson,* 643 F.3d at 1042.

## III. DISCUSSION

Rather than address the parties' motions separately, it will be easier to break the parties' arguments down separately for each of the plaintiff's claims for relief. The plaintiff's complaint alleges three claims for relief:

1. The plaintiff was deprived of his right to be free from unlawful arrest contrary to the Fourth Amendment to the U.S. Constitution. Filing 1-1 at 7.

2. The plaintiff was subjected to excessive force in violation of the Fourteenth Amendment to the U.S. Constitution.[3] Filing 1-1 at 8.

3. The plaintiff was denied his right to due process under the Fourteenth Amendment—specifically, his right to a fair court proceeding—by the defendants' failure to retain any copies of the video surveillance of the plaintiff's detention. Filing 1-1 at 9.

The Court will discuss each claim in turn.[4]

---

[3] The plaintiff's complaint actually raises the Fifth and Fourteenth Amendments, but as will be explained below, it is the Fourteenth Amendment that's relevant here.

- 4 -

1. UNLAWFUL ARREST

The plaintiff's first claim is that he was unlawfully arrested after his acquittal. The defendants argue that this claim is barred by *Heck*, 512 U.S. 477. Filing 23 at 7. The Court agrees.

In *Heck*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (emphasis in original) (footnotes omitted).

Thus, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, declared invalid by an appropriate state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486–87. This has come to be known as the "favorable termination" requirement of *Heck*. *See*, *Marlowe v. Fabian*, 676 F.3d 743, 745 (8th Cir. 2012).

A guilty plea forecloses a § 1983 claim for arrest without probable cause. *Williams v. Schiaro*, 93 F.3d 527, 528-29 (8th Cir. 1996); *see*, *Sanders v. Fayetteville City Police Dep't*, 160 F. App'x 542, 543 (8th Cir. 2005); *Anderson v. Franklin Cnty., Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999). As noted above, the plaintiff was convicted, pursuant to a no contest plea, of attempted third degree assault arising out of his contact in the courtroom with Slade. Filing 23 at 4. So, in order to show that there was no probable cause for his arrest, the plaintiff would need to show that he had not, in fact, assaulted Slade. And the plaintiff's conviction for that assault has not been reversed or invalidated. Filing 23 at 4. Accordingly, his unlawful arrest claim is barred by *Heck*.

---

[4] Although the plaintiff's complaint is not specific on this point, the Court understands all the plaintiff's claims to have been brought pursuant to 42 U.S.C. § 1983.

The plaintiff's argument to the contrary is threefold. First, the plaintiff cites *Spencer v. Kemna*, 523 U.S. 1 (1998), for the proposition that a claim is not *Heck*-barred if the plaintiff has been released from imprisonment on the underlying conviction. Filing 32 at 17-20. The plaintiff goes so far as to assert that *Spencer* overruled *Heck*. Filing 32 at 18. Unfortunately for the plaintiff, what his brief relies upon is actually Justice Souter's concurring opinion in *Spencer*, which did not muster a majority. 523 U.S. at 18-22. And the Eighth Circuit has expressly held, in the wake of *Spencer*, that *Heck*'s favorable-termination rule still applies when a § 1983 plaintiff is not incarcerated. *Newmy v. Johnson*, 758 F.3d 1008, 1010-12 (8th Cir. 2014) (citing *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007)). The Eighth Circuit "recognize[d] that this rule could preclude a damages remedy for an inmate who is detained for only a short time with limited access to legal resources, but that is a consequence of the principle barring collateral attacks that was applied in *Heck*." *Id.* And the Court of Appeals, in no uncertain terms, reaffirmed its holding that *Heck* "impose[s] a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence." *Id.*

Second, the plaintiff argues that he only pled no contest to assault because video recordings of the force used to arrest him had not been retained, and he was threatened with the charge of being a habitual criminal. Filing 32 at 20. Essentially, he implies that his guilty plea was coerced. But *Heck* holds that a § 1983 claim that would necessarily imply the invalidity of a conviction or sentence should be dismissed without prejudice unless the "conviction has *already* been invalidated." *Anderson*, 192 F.3d at 1131 (emphasis supplied). His allegation of a coerced plea does not change that. *See id.*

Finally, the plaintiff suggests it makes a difference that he pled no contest, instead of guilty. Filing 32 at 21. He points out that evidence of a plea of *nolo contendere* is not admissible evidence against the person who made it. *See*, Fed. R. Evid. 410; Neb. Rev. Stat. § 27-410. But *Heck* is premised on a previous conviction, not the plea from which it may have resulted. *See Olsen v. Correiro*, 189 F.3d 52, 66-70 (1st Cir. 1999); *see also*, *Radwan v. Cnty. of Orange*, 519 F. App'x 490, 490-91 (9th Cir. 2013); *Claunch v. Williams*, 508 F. App'x 358, 359 n.2 (5th Cir. 2013); *Quinlan v. City of Pensacola*, 449 F. App'x 867, 870 (11th Cir. 2011); *Marable v. West Pottsgrove Twp.*, 176 F. App'x 275, 280 (3d Cir. 2006); *cf. Moore v. Sims*, 200 F.3d 1170 (8th Cir. 2000). Rule 410 does not preclude evidence of a prior conviction, even if it was based on a plea of *nolo contendere*. *Olsen*, 189 F.3d at 58-66.

Simply put, the plaintiff's false arrest claim is based on the assertion that there was no probable cause to arrest him. Such a finding would

necessarily imply the invalidity of his conviction for assault, and that conviction has not been set aside. Accordingly, the plaintiff's first claim for relief is *Heck*-barred.

## 2. EXCESSIVE FORCE

The plaintiff's second claim for relief—that excessive force was used in his continued detention—is not *Heck*-barred. A finding that law enforcement used excessive force would not necessarily imply the invalidity of the plaintiff's subsequent conviction, because there is no inherent conflict between a conviction for assaulting an officer and a finding that law enforcement used excessive force in effectuating the arrest. *Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1007-08 (8th Cir. 2014).

The plaintiff's claim is brought against the County and County employees in their official and individual capacities, and it will be necessary to separately evaluate the plaintiff's official and individual capacity excessive force claims. But as a preliminary matter, it is necessary to consider what constitutional standard is applicable to the unique circumstance of a plaintiff who alleges that excessive force was applied *after* his acquittal, but *before* he was released from custody or charged with another offense.

It matters because the constitutional standard applied when excessive force is alleged may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). The first step in analyzing a § 1983 excessive force claim is to identify the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). If the victim is an arrestee, the Fourth Amendment's "objective reasonableness" standard applies. *Andrews*, 253 F.3d at 1060; *see, Schoettle v. Jefferson Cnty.*, No. 14-1993, 2015 WL 3621446, at *3 (8th Cir. June 11, 2015); *Bernini v. City of St. Paul*, 665 F.3d 997, 1006 (8th Cir. 2012). The evaluation of excessive force claims brought by pretrial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard. *Andrews*, 253 F.3d at 1060; *see Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011). While the Eighth Circuit has not drawn a bright line dividing the end of arrestee status and the beginning of pretrial detainee status, *see Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000), it is clear that the state may not punish a pretrial detainee. *Andrews*, 253 F.3d at 1060-61; *see, Kingsley v. Hendrickson*, No. 14-6368, 2015 WL 2473447, at *8 (U.S. June 22, 2015); *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). And excessive force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment, in which the

Court considers whether force was applied in a good-faith effort to maintain and restore discipline or maliciously and sadistically for the purpose of causing harm. *Andrews*, 253 F.3d at 1061; *see Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006).

None of those categories fits precisely here, but the Court finds that the Fourteenth Amendment standard applicable to pretrial detainees should apply (although that standard, as will be explained, incorporates aspects of the Fourth and Eighth Amendment tests). To begin with, the Fourth Amendment doesn't fit the facts: it is apparent that what happened to the plaintiff—under any account—was related to his *continued* detention, not a fresh arrest on a new charge. As the Fifth Circuit has said, the Fourth Amendment does not provide "an appropriate constitutional basis for protecting against deliberate official uses of force occurring *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir. 1994) (emphasis in original) (citation and quotation omitted). Accordingly, the Fifth Circuit applied Fourteenth Amendment standards to the re-apprehension of a pretrial detainee who attempted to escape while being transported, because "[u]ntil the detainee is released from custody, this status never reverts back to that of mere suspect." *Id.* at 457.

Nor does the Eighth Amendment fit, because it is intended to draw the line between permissible and impermissible punishments, and until a prisoner has been convicted of a crime, punishment of any kind is impermissible. *See Kingsley*, 2015 WL 2473447, at *8. Accordingly, when a plaintiff found not guilty by reason of insanity was allegedly subjected to excessive force at the facility where he had been involuntarily committed after his acquittal, the Eighth Circuit held that the Fourteenth Amendment was applicable. *Andrews*, 253 F.3d at 1061. The plaintiff, the Court of Appeals said, had been found not guilty,

> and thus he was not a "prisoner" subject to punishment. The Eighth Amendment excessive-force standard provides too little protection to a person whom the state is not allowed to punish. On the other hand, the state . . . was entitled to hold [the plaintiff] in custody. His confinement in a state institution raised concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations. Accordingly, we conclude that [the plaintiff]'s

- 8 -

excessive-force claim should be evaluated under the objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees.

*Id.*

Much the same is true here. The plaintiff, as in *Andrews*, might fairly be characterized as a "post-trial detainee." And as in *Andrews*, the same governmental concerns are implicated. Guided by the Eighth Circuit's reasoning in *Andrews*, the Court will apply a Fourteenth Amendment standard to the plaintiff's excessive force claim.

Under that standard, the plaintiff must show that force was purposely or knowingly used against him,[5] and that the force used was objectively unreasonable. *Kingsley*, 2015 WL 2473447, at \*5. Objective reasonableness turns on the facts and circumstances of each particular case. *Id.* A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id.* A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security. *Id.* Considerations that bear on the reasonableness or unreasonableness of the force used may include the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.* at \*6. A plaintiff can prevail by providing objective evidence that the challenged government action was not rationally related to a legitimate government purpose or that it was excessive in relation to that purpose. *Id.*

And while the Eighth Amendment is not directly applicable, the Fourteenth Amendment affords rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Smith v. Conway Cnty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014); *Edwards*, 750 F.3d at 732. Conduct constituting "cruel and unusual punishment" *a fortiori* constitutes punishment, and the Due Process Clause prohibits any punishment of a detainee, cruel-and-unusual or not. *Smith*, 759 F.3d at 858;

---

[5] The Supreme Court in *Kingsley*, 2015 WL 2473447, at \*5, also left the door open to liability for force used recklessly, but on the facts presented here, the use of force (whether or not it was justified) was clearly deliberate.

- 9 -

*Edwards*, 750 F.3d at 732 n.2. So if the use of force in this case would have violated the Eighth Amendment had the plaintiff been a prisoner, that conduct necessarily violated his rights under the Fourteenth Amendment. *Edwards*, 750 F.3d at 732. But an official's use of force does not amount to punishment in the constitutional sense if it is simply an incident of some other legitimate governmental purpose. *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014).

With that framework established, the next question the Court must address is whether the County, or the County's employees in their official capacities, may be held liable.

### (a) Official Capacity Claims

A municipality can be held liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). *Respondeat superior* or vicarious liability will not attach under § 1983. *City of Canton*, 489 U.S. at 385; *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). But local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Johnson*, 725 F.3d at 828 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Moreover, local governments may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. *Id.* (citing *Monell*, 436 U.S. at 690-91). Thus, the first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385.

### *(i) Policy*

There is no evidence here of a policy causing any constitutional deprivation. The County has presented evidence of its use of force policy, which limits the use of force to legitimate governmental interests such as self-defense, prevention of injury, and enforcement of lawful orders. Filing 24-1 at 11. The policy provides for an escalation of the use of force, beginning with officer presence and verbal direction, followed by a show of force and display of the ERD before the ERD is used, then proceeding to "soft empty hand control" using pressure points and pain compliance. Filing 24-1 at 12. And "[t]he use of excessive force is strictly prohibited." Filing 24-1 at 12. The plaintiff has presented no evidence to contradict the County's evidence of its

policy regarding the use of force. Nor has the plaintiff presented any allegation, evidence, or argument suggesting that the County failed to adequately train its officers in the appropriate use of force. *See*, *City of Canton*, 489 U.S. at 390; *B.A.B. v. Bd. of Educ. of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012).

Instead, the plaintiff proffers three theories regarding the County's policy. The first is that Powers, as a sergeant, is a "policymaker" for the County, so his actions or inactions constitute official policy. Filing 32 at 28. This argument is without merit. Whether an individual exercised final policymaking authority for a municipality is a question of state law. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). For instance, in *Atkinson*, the Court of Appeals held that a city police chief was not a municipal policymaker, because the mayor and board of aldermen of the city had the ultimate policymaking authority, and there was no evidence that the city had a record of delegating such authority to the police chief. *Id.* at 1215-16. Similarly, in *Bernini*, the Eighth Circuit held that an area commander for the City of St. Paul, Minnesota, who commanded approximately 500 officers, was not a "policymaker" because there were layers of policymaking authority above the area commander's rank, starting with the chief of police. 665 F.3d at 1008. The fact that the area commander "had discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* (citation and quotation omitted).

In this case, the plaintiff points to no state or local positive law, nor any state or local custom or usage having the force of law, suggesting that a corrections sergeant is somehow responsible for final policymaking for the County. *See Atkinson*, 709 F.3d at 1215. Nor is the Court aware of such authority. A "policy" for these purposes involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the *final* authority to establish governmental policy. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Powers was not such an official.[6]

Second, the plaintiff contends that the County's use of force policy is itself deficient. Filing 32 at 28-29. The plaintiff asserts that "interpersonal skills and direct supervision techniques" play no part on the "use of force continuum," and that it is "counterintuitive" that the ERD is used before "soft

---

[6] The plaintiff's complaint also identifies "Defendant Gray" as a policymaker who was in attendance. Filing 1-1 at 9-10. But there is no defendant named Gray. The plaintiff is presumably referring to Lieutenant Rick Gray, who was at that time in charge of transport. Filing 21-10 at 7; filing 24-6 at 28. But although Gray was Powers' superior officer, he was no more a policymaker than Powers.

- 11 -

empty hand control." Filing 32 at 29. But there are two problems with that argument. First, the Court is not convinced that it is consistent with the plaintiff's evidence. The plaintiff's own testimony does not suggest that the County's use of force policy caused a constitutional deprivation; rather, if the plaintiff's testimony is credited, then the defendants' *failure* to follow the policy caused a constitutional deprivation. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 987 (8th Cir. 2006). That does not support municipal liability, *see id.*, and the Court is not persuaded that the plaintiff may ground his claims against the County on the falsity of his own testimony. But more fundamentally, the plaintiff's criticism of the County's use of force policy falls short of implicating constitutional concerns. Simply put, the use of force policy is entirely consistent with the Fourteenth Amendment standard for the use of force set forth above.

Finally, the plaintiff also suggests that the County's failure to create or retain video surveillance was a County policy supporting municipal liability. Filing 1-1 at 9. It is not clear whether this allegation was meant to relate to the plaintiff's excessive force claim, but for the sake of completeness, the Court notes that the Eighth Circuit has rejected a claim that the failure to use recording equipment was a proximate cause of excessive force, as the recording "would only show the events leading up to the alleged assault" but "could not have prevented or caused the assault." *Elder-Keep*, 460 F.3d at 987; *cf. Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013) (municipal liability requires direct causal link between municipal policy and alleged constitutional deprivation).

### *(ii) Custom*

Nor is there evidence in this case of a "custom" supporting the County's liability. To show the existence of a "custom," it is necessary to establish (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. And in the absence of a pattern, it is equally difficult to infer notice of a custom to policymaking officials and deliberate indifference on their parts. *See Johnson*, 725 F.3d at 829. There is no such evidence here. Although the plaintiff alleges "there have been other reported cases" of the use of the restraint chair and ERD, the plaintiff has not identified one.

In the absence of a policy or custom that is causally linked to the alleged violation of the plaintiff's constitutional rights, the County is entitled to summary judgment.

### *(iii) Individual Defendants in Official Capacities*

The Court's disposition of the plaintiff's claims against the County is also dispositive of his claims against the individual defendants in their official capacities. It is well-settled that a suit against a governmental actor in his official capacity is treated as a suit against the government entity itself. *Alexander*, 718 F.3d at 766; *Brockinton*, 503 F.3d at 673. Accordingly, summary judgment is appropriate as to the individual defendants in their official capacities.

### (b) Individual Capacity Claims

Although the plaintiff's excessive force claims against Powers, Holbrook, and Eisenmann in their official capacities will be dismissed, the plaintiff may proceed against them in their individual capacities unless they are protected by qualified immunity.

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ransom v. Grisafe*, No. 14-2204, 2015 WL 3824763, at *4 (8th Cir. June 22, 2015); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1058 (8th Cir. 2013); *Bernini*, 665 F.3d at 1002; *Brockinton*, 503 F.3d at 671. This immunity applies to discretionary functions of government actors. *Ransom*, 2015 WL 3824763, at *4. An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right; and (2) the right was clearly established at the time of the violation. *Robinson v. Payton*, No. 14-1962, 2015 WL 3937653, at *3 (8th Cir. June 29, 2015); *Ulrich*, 715 F.3d at 1058; *Bernini*, 665 F.3d at 1002.

So, to overcome the defense of qualified immunity, the plaintiff must have shown that the officers' actions violated a constitutional right that was clearly established at the time of their alleged misconduct. *Ransom*, 2015 WL 3824763, at *4. In other words, the officers must have been plainly incompetent or must have knowingly violated the law when they used force against him. *Id.*; *see Brockinton*, 503 F.3d at 671-72. And the Court evaluates the defense of qualified immunity from the perspective of a reasonable officer based on facts available to the officer at the time of the alleged constitutional violation. *Ransom*, 2015 WL 3824763, at *4.

Specifically, to withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right. *Brockinton*, 503 F.3d at 672; *see Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006).

The Court finds that the plaintiff has met that burden here. The plaintiff has asserted—and presented evidence—that he was subjected to physical force despite engaging in no misconduct and proffering no resistance to any direction from the defendants. Specifically, the plaintiff's testimony, if credited by the trier of fact, would support a conclusion that Powers used unnecessary force on the plaintiff outside the courtroom, that Holbrook and Eisenmann used unnecessary force on the plaintiff in the elevator to the IDF, and that Powers and Holbrook unnecessarily used their ERDs on the plaintiff while all three defendants collaborated in strapping the plaintiff into a restraint chair. And while Eisenmann is not alleged to have used an ERD on the plaintiff, the plaintiff testified that he was present, and an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may also be held liable. *See*, *Robinson*, 2015 WL 3937653, at *3; *Smith*, 759 F.3d at 861; *Hicks*, 640 F.3d at 843.

In sum, these facts, if proved, could show that the defendants "did not apply this force in order to restore order or discipline but rather for the sole—and impermissible—purpose of inflicting unjustified harm on the [plaintiff]." *Edwards*, 750 F.3d at 732. The Court is also mindful of the Eighth Circuit's decisions in *Smith*, 759 F.3d at 859, and *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993), which can be read to stand for the proposition that the use of an ERD to enforce compliance, even with a lawful order, may be constitutionally excessive force where the detainee did not present a physical threat to the officers. An officer may use force—including an ERD—in a good-faith effort to maintain or restore discipline, but not maliciously and sadistically to cause harm to a nonviolent detainee who is simply slow to comply with the officer's non-emergency instruction. *Smith*, 759 F.3d at 859.

And the right to be free from excessive force is a clearly established right. *See id.* at 861; *see also*, *Atkinson*, 709 F.3d at 1212; *Edwards*, 750 F.3d at 733. Accordingly, the Court finds that the plaintiff has raised genuine issues of material fact as to whether his right to be free from excessive force was violated, and whether the officers who used that force (or permitted it to be used) would have known that. A jury will determine the credibility of each of these claims. The Court will deny qualified immunity to the individual

defendants in their individual capacities on the plaintiff's excessive force claim.

### 3. VIDEO RECORDING POLICY

The plaintiff's final claim for relief is hard to make out. The underlying facts are fairly straightforward: the County contends that no video recording exists of the incidents that gave rise to this case. The County's evidence is that while there were approximately 100 cameras in the IDF at the time, the County only had ports to record from 32 of them. Filing 24-10 at 18. Of those 32, 16 were hard-wired to record, while the other 16 to record could be selected through software. Filing 24-10 at 18, 26-28. The County was only able to find footage of the plaintiff being wheeled in the restraint chair into the elevator, the booking area, and a holding cell, presumably after any use of force. Filing 24-10 at 26. According to the County, none of the cameras that might have been in position to record other parts of the incident were recording. Filing 24-10 at 26.

The plaintiff's complaint suggests that the County's failure to keep recordings of the incident somehow violated his Due Process right to a fair court proceeding. Filing 1-1 at 9. It is not entirely clear from the complaint which court proceeding the plaintiff meant: the assault charge, or the instant case. His brief elucidates that theory somewhat: the plaintiff suggests that he was denied his right to a fair hearing on the assault charge by the failure to retain exculpatory evidence. Filing 21 at 30.

But because that theory is premised on the inadequacy of his state criminal proceeding, it calls into question the validity of a conviction that has not been independently invalidated; as such, it is plainly *Heck*-barred. *See Moore v. Novak*, 146 F.3d 531, 536 (8th Cir. 1998). The plaintiff's brief in support of his motion for summary judgment also expands on this theory in a way that does not clearly appear in his complaint: the theory that his Due Process rights were violated because the assault charges against him were not adequately investigated, and false evidence was presented. Filing 21 at 26-30. But to the extent that this claim has been raised, it is also *Heck*-barred. *See Moore v. Sims*, 200 F.3d at 1172.

### IV. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment will be overruled in its entirety. The defendants' motion will be granted as to the plaintiff's unlawful arrest and fair court proceeding claims, as to the County on the plaintiff's excessive force claim, and as to Powers, Holbrook, and Eisenmann in their official capacities on the plaintiff's excessive force claim. Summary judgment will be denied on the plaintiff's

excessive force claim as to Powers, Holbrook, and Eisenmann in their individual capacities.

IT IS ORDERED:

1. The plaintiff's motion for summary judgment (filing 20) is denied.

2. The defendants' motion for summary judgment (filing 22) is granted in part.

3. The plaintiff's first and third claims for relief are dismissed without prejudice.

4. The plaintiff's second claim for relief is dismissed as to the County.

5. The plaintiff's second claim for relief is dismissed as to defendants Powers, Holbrook, and Eisenmann in their official capacities.

6. The balance of the defendants' motion for summary judgment (filing 22) is denied.

Dated this 13th day of July, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge